The Honorable John C. Coughenour

1
2
3
4
5
6
7

8                           UNITED STATES DISTRICT COURT

9                         WESTERN DISTRICT OF WASHINGTON

10                                    AT SEATTLE

11  | In re: | Case No. 2:20-cv-01571 |

12  SETH BASIL COLCHESTER,     **LAZARO'S OPPOSITION TO MOTION FOR**

13          Petitioner,        **IMMEDIATE ORDER TO RETURN CHILD UNDER THE CONVENTION**

14      v.                     **ON THE CIVIL ASPECTS OF INTERNATIONAL CHILD**

15  JEWEL LAZARO,              **ABDUCTION**

16          Respondent.        Noted for Hearing: December 11, 2020

17                             *REDACTED PUBLICLY FILED VERSION*

18
19
20
21
22
23
24
25
26
27
28

OPPOSITION TO MOTION FOR
IMMEDIATE ORDER
Case No. 2:20-cv-01571

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

I.    INTRODUCTION ................................................................................................. 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ......................................... 2

    A.    Mr. Colchester often subjected Ms. Lazaro to physical and emotional abuse and coerced her into living in Spain for long stretches. ............................................... 2

    B.    Mr. Colchester abuses S.L.C. after she goes with him to Spain. ........................ 5

    C.    Ms. Lazaro's tries to protect herself and S.L.C. and Mr. Colchester launches this action. ................................................................................................ 7

III.  ARGUMENT ......................................................................................................... 8

    A.    Mr. Colchester's motion is a disguised request for summary judgment, which must be denied when genuine disputes of material fact exist. ............................ 8

    B.    Because of an intervening change in governing law and factual questions unanswered in prior litigation, those actions do not control the outcome here. 11

        1.    The 2018 Hague Convention proceedings did not decide the facts supporting Mr. Colchester's current action. ........................................... 12

        2.    The Snohomish County domestic violence decision was not a final judgment on the merits and did not decide issues identical to those in question here. ...................................................................................... 14

        3.    Nor was the King County domestic violence decision a final judgment on the merits addressing identical issues to the ones in play here. ....... 15

        4.    Mr. Colchester has not carried his burden to prove the preclusive effect of any proceeding in Spain. ................................................................... 16

    C.    Because there are genuine disputes over S.L.C.'s habitual residence—a "fact-driven inquiry"—summary judgment is improper. ........................................... 16

    D.    Genuine disputes over whether returning S.L.C. to Spain would pose a grave risk of harm preclude summary judgment ........................................................ 18

    E.    Even if the Court adopted Mr. Colchester's summary procedure, the motion would lack merit. ............................................................................................... 20

IV.   CONCLUSION ..................................................................................................... 21

OPPOSITION TO MOTION FOR
IMMEDIATE ORDER
Case No. 2:20-cv-01571

- i -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3  **Cases**

4  *Anderson v. Liberty Lobby, Inc.,*
5     477 U.S. 242 (1986) ........................................................................................10

6  *Balint v. Carson City,*
   180 F.3d 1047 (9th Cir. 1999) .........................................................................10

7  *Christensen v. Grant Cty. Hosp. Dist. No. 1,*
8     152 Wash. 2d 299, 96 P.3d 957 (2004) .................................................11, 12, 14

9  *Clark v. Bear Stearns & Co., Inc.,*
   966 F.2d 1318 (9th Cir. 1992) .........................................................................11
10

*In re Custody of A.T.,*
11     11 Wn. App. 2d 156, 451 P.3d 1132 (2019) ...................................................13

12  *Dana's Housekeeping, Inc. v. Dep't of Labor,*
13     76 Wn. App. 600, 886 P.2d 1147 (1995) .......................................................13

14  *Dot Foods, Inc. v. State Dep't of Rev.,*
   185 Wash. 2d 239, 372 P.3d 747 (2016) ...................................................12, 13
15

*Espinosa-Cisneros v. Solis-Lopez,*
16     2016 WL 7428233 (D. Nev. Dec. 14, 2016), *report and recommendation*
17     *adopted*, 2017 WL 1025175 (D. Nev. Mar. 16, 2017) ....................................21

18  *Farr v. Kendrick,*
   824 F. App'x 480 (9th Cir. 2020) ...................................................9, 16, 17, 20
19

*Frudden v. Pilling,*
20     877 F.3d 821 (9th Cir. 2017) .........................................................................10

21  *Garcia v. Duarte Reynosa,*
22     2020 WL 363404 (W.D. Wash. Jan. 22, 2020) ................................................8

23  *Garcia v. Duarte Reynosa,*
   2020 WL 777247 (W.D. Wash. Feb. 18, 2020) ..............................................10

24  *Holder v. Holder,*
25     2003 WL 24091906 (W.D. Wash. June 13, 2003) (Coughenour, J.), *aff'd,*
   392 F.3d 1009 (9th Cir. 2004) ..........................................................................9
26

*Jones v. Wood,*
27     206 F.3d 557 (9th Cir. 2000) .....................................................................11, 15

28

OPPOSITION TO MOTION FOR
IMMEDIATE ORDER
Case No. 2:20-cv-01571

- ii -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

*MacFarlane v. MacFarlane,*
  2018 WL 4150966 (W.D. Wash. July 24, 2018)............................................8, 17

*March v. Levine,*
  249 F.3d 462 (6th Cir. 2001)........................................................................10

*Matovski v. Matovski,*
  2007 WL 1575253 (S.D.N.Y. May 31, 2007).....................................................9

*Modumental, Inc. v. Xtalic Corp.,*
  4 Wn. App. 2d 810, 425 P.3d 871 (2018) ........................................................14

*Monasky v. Taglieri,*
  140 S. Ct. 719 (2020) .........................................................12, 13, 16, 17, 18, 19

*Mozes v. Mozez,*
  239 F.3d 1067 (9th Cir. 2001).................................................................12, 13

*Murphy v. Sloan,*
  764 F.3d 1144 (9th Cir. 2014).......................................................................16

*Papakosmas v. Papakosmas,*
  483 F.3d 617 (9th Cir. 2017).....................................................................17, 20

*Reid v. Covert,*
  354 U.S. 1 (1957) ........................................................................................10

*In re Smith,*
  185 Wn. App. 1020 (2015)............................................................................13

*Tsarbopoulos v. Tsarbopoulos,*
  176 F. Supp. 2d 1045 (E.D. Wash. 2001) ...................................................20, 21

*In re Tsarbopoulos,*
  243 F.3d 550 (9th Cir. 2000)...........................................................8, 11, 17, 18

*Weintraub v. Waite,*
  2013 WL 6622899 (W.D. Wash. Dec. 16, 2013).............................................9, 18

*West v. Dobrev,*
  735 F.3d 921 (10th Cir. 2013).......................................................................10

**Statutes**

International Child Abduction Remedies Act (the "Act") ...................................1, 8, 14

**Other Authorities**

10A Charles Alan Wright et al., *Federal Practice and Procedure* § 2712 (4th
  ed. April 2020 Update)...................................................................................8

OPPOSITION TO MOTION FOR
IMMEDIATE ORDER
Case No. 2:20-cv-01571

- iii -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

Fed. R. Civ. P. ...................................................................................................2, 8

Fed. R. Civ. P. 1 .......................................................................................................8

Fed. R. Civ. P. 56 .....................................................................................................8

Fed. R. Civ. P. 56(a) ..............................................................................................10

Fed. R. Civ. P. 81 .....................................................................................................8

Hague Convention on the Civil Aspects of International Child Abduction
    Article 13(b) .....................................................................................................18

Hague Convention on the Civil Aspects of International Child Abduction (the
    "Convention") .....................................................................................................1

Restatement (2d) of Judgments § 27 (1982) .........................................................16

Restatement (2d) of Judgments § 28 (1982) .........................................................13

Washington Civil Rule 41(b) .................................................................................15

OPPOSITION TO MOTION FOR
IMMEDIATE ORDER
Case No. 2:20-cv-01571

- iv -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

1

## I.    INTRODUCTION

2    This action deals with the Hague Convention on the Civil Aspects of International

3   Child Abduction and its implementing legislation—the International Child Abduction

4   Remedies Act (the "Act"). Petitioner Seth Colchester's seeks the return of the parties' minor

5   child to Spain under the Convention and the Act, even though Spain is not the child's habitual

6   residence and she would face grave risks if Mr. Colchester prevails.

7    Mr. Colchester's request to short-circuit these proceedings fails. Instead, an evidentiary

8   hearing must decide the critical factual disputes. These disputes include (1) whether Spain is

9   the habitual residence of a U.S. citizen child, S.L.C., who speaks little Spanish, considers

10   America and her mother's family her home, and who has spent most of her life under the care

11   of her U.S. citizen mother and (2) whether Mr. Colchester's documented history of abusing

12   both the child and her mother and involvement in the illegal drug trade pose a grave risk of

13   physical or psychological harm to the child if she is removed to Spain.

14    Respondent Jewel Lazaro has endured years of emotional and—at times—physical and

15   financial abuse from Mr. Colchester. But this spring, while staying with him in Spain, she

16   witnessed him threaten to rip their young child's ear off, scream at her, trip her and hit her on

17   the side of her head, physically throw her out of a room and onto the floor, and try to kick her

18   down a flight of stairs. Fearing for S.L.C.'s safety, she fled to the United States, where S.L.C.

19   has lived for much of her life, despite spending much of the rest of her time in Spain because

20   of Mr. Colchester's domineering threats to cut off her and Ms. Lazaro financially if they did

21   not remain there and Ms. Lazaro's frequent inability to afford to fly the child home to

22   Washington on her own. S.L.C.'s home is the United States, more specifically, Western

23   Washington. And even if her home were both Spain and Western Washington, she would face

24   a grave risk of harm if she were to be wrenched away from her mother, to whom she is

25   profoundly attached, and returned to Spain to live with an abusive father who is a drug dealer,

26   with no other family present to protect her.

27    Mr. Colchester does not address these factual disputes and certainly does not disprove

28

OPPOSITION TO MOTION FOR
IMMEDIATE ORDER                    - 1 -
Case No. 2:20-cv-01571

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

1  them. And he even fails to explain the standards under which the Court should assess rulings

2  in related litigation that he claims dispose of this matter. Indeed, his motion fails to identify a

3  procedure for the relief he seeks under either the Federal Rules of Civil Procedure or the Local

4  Rules of this Court. His request for a dispositive ruling based on evidence outside the

5  pleadings is an effort to have this Court rule on a disguised summary judgment motion—one

6  he must lose. Because the earlier litigation on which his motion turns did not decide the issues

7  here and—as for Ms. Lazaro's prior efforts to defend herself from Mr. Colchester's violence—

8  were not final decisions on the merits, they do not control the outcome.

9      Mr. Colchester bears the burden of proving his prima facie case. He also bears the

10  burden on summary judgment. Last, he bears the burden of proving that prior decisions have

11  preclusive effect here. His motion satisfies none of these burdens. So Ms. Lazaro asks the

12  Court to deny it.

13  ## II.  FACTUAL AND PROCEDURAL BACKGROUND[1]

14  **A.**   **Mr. Colchester often subjected Ms. Lazaro to physical and emotional abuse and**
15       **coerced her into living in Spain for long stretches.**

16      Ms. Lazaro is a U.S. citizen from Washington. Declaration of Jewel Lazaro ¶ 2. She

17  began dating Mr. Colchester—a citizen of Ireland—after meeting him in Canada in 2010. *Id.*

18      Shortly after moving to one of his several homes in Barcelona, Spain in 2014, their

19  relationship began breaking down amid physical and emotional abuse. *Id.* ¶¶ 3–4. She also saw

20  firsthand that Mr. Colchester earned his living through trafficking marijuana (and sometimes

21  other illicit drugs), including maintaining large grow-houses in Spain. *See id.* ¶ 5. Ms. Lazaro

22  has seen him collect large revenues in cash for his trafficking and hide much of that money in

23  the backyard of his house in Spain and in a barn at his parents' home in Ireland. *Id.*

24  Mr. Colchester has also admitted that he deals marijuana for a living to at least one third party.

25  *See* Declaration of John W. Wolfe, Ex. 1 (Kirkpatrick Decl.) ¶ 2.

26      In May 2014, Ms. Lazaro became pregnant. Lazaro Decl. ¶ 6. After spending her

27

28  ---
[1] This account credits Ms. Lazaro's evidence, as the Court must at summary judgment.

OPPOSITION TO MOTION FOR
IMMEDIATE ORDER                        - 2 -
Case No. 2:20-cv-01571

1   second trimester home in Washington, Ms. Lazaro acceded to Mr. Colchester's threats that he

2   would cut off their child financially, and that she would grow up without a father, and traveled

3   to Ireland in October 2014. *Id.* ¶ 7. While in Ireland, she continued to endure threats and abuse

4   from Mr. Colchester while pregnant, including an incident in which he dragged her out of a car

5   and across gravel, leaving the whole left side of her body horribly bruised, and left her

6   stranded in the Irish countryside for hours. *Id.* ¶ 9.

7        Ms. Lazaro gave birth to S.L.C.—who holds Irish and U.S. citizenship—in early 2015.

8   *See id.* ¶ 10. Despite S.L.C.'s birth, Mr. Colchester's emotional and physical abuse of

9   Ms. Lazaro continued unabated. *Id.* ¶¶ 10–11. In February 2015, Mr. Colchester decided that

10  the three would relocate to Spain. Ms. Lazaro had no choice in the matter—not only was she

11  the victim of Mr. Colchester's emotional and physical abuse, but she also depended on

12  Mr. Colchester to support their infant daughter financially and faced an expired visa and the

13  fear that she would be unable to bring S.L.C. to the U.S. without Mr. Colchester's permission.

14  *Id.* ¶ 12. In April 2015, the three moved to Washington to avoid inquiries over

15  Mr. Colchester's drug dealing following a fire at his marijuana warehouse in Poblenou,

16  Barcelona, Spain. This is where Ms. Lazaro hoped to remain because she grew up here and her

17  family lives here. *Id.* ¶ 14. Mr. Colchester even explored business opportunities at marijuana

18  dispensaries in Washington. *Id.* ¶ 16.

19       At Mr. Colchester's insistence—and in response to his threat that she would "regret"

20  not staying with him—they returned to Spain in August 2015. *Id.* Their home there, which

21  included another grow-house, was robbed, possibly over Mr. Colchester's drug activity, for the

22  third time over the course of their relationship. *Id.* ¶ 18. Despite Ms. Lazaro's pleas for

23  Mr. Colchester to exit the drug trade, he persisted. He likewise continued belittling and

24  threatening her, and doing little to nothing to care for S.L.C. *Id.*

25       By April 2016, after her romantic relationship with Mr. Colchester ended, Ms. Lazaro

26  returned home to Washington with S.L.C. *Id.* ¶ 19. While there, she sought and received food

27  and health benefits and searched for a job. *Id.* As a result of Mr. Colchester's commitments to

28

OPPOSITION TO MOTION FOR
IMMEDIATE ORDER
Case No. 2:20-cv-01571

- 3 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

cease his abuse and offer to rent a separate apartment for Ms. Lazaro and S.L.C to live in for them to feel safe, Ms. Lazaro traveled to Spain with S.L.C. in October 2016. *Id.* ¶ 20. But Mr. Colchester's behavior did not improve. While living apart in Spain, Mr. Colchester continued to torment Ms. Lazaro, including by threatening to cut off S.L.C. and destroying Ms. Lazaro's possessions. *Id.* ¶¶ 20; 22. He also often threatened to evict Ms. Lazaro and insulted her, often calling her worthless, uneducated, and overly emotional. This led Ms. Lazaro to inform Mr. Colchester that she wished to go back to Washington. *Id.*

In July 2017, Ms. Lazaro returned S.L.C. to Washington. There she sought legal assistance without success and, although she told Mr. Colchester that she wanted to stay in the U.S., he threatened her with prosecution for child abduction if she did not return to Spain. Having failed to secure pro bono or affordable legal counsel and, fearing prosecution and Mr. Colchester's threats, she went to Spain with S.L.C. in August 2017. *Id.* ¶ 22. On Ms. Lazaro's arrival in Spain, Mr. Colchester continued to exert financial pressure on her as she could not work legally in Spain. *Id.* ¶ 22–24. And he continued threatening to take S.L.C. from her if she did not comply with demands. *See id.*

Next, in March 2018, S.L.C. faced sexual abuse at the alternative preschool that Mr. Colchester insisted she attend. *Id.* ¶ 25. Even though Ms. Lazaro, when she came to pick up S.L.C. from school, saw S.L.C. with her pants and underwear down and two young boys touching her inappropriately, the school staff sought to justify this inappropriate sexual touching by explaining that these "games" tracked the school's pedagogy. *Id.* Despite professional psychiatric advice that this form of play was abusive and inappropriate, Mr. Colchester refused to remove S.L.C. from the school. *Id.*

Then, based in part on interactions with the American embassy, Ms. Lazaro fled—first to elsewhere in Spain, then France and finally, in April 2018, back to Washington. *Id.* ¶¶ 25–26. That August, Mr. Colchester petitioned under the Convention. *See* Dkt. No. 12-2. The Snohomish County Superior Court granted that petition. Wolfe Decl., Ex. 2. It did not consider any live testimony of either Mr. Colchester or Ms. Lazaro, and heard no other witnesses either.

OPPOSITION TO MOTION FOR
IMMEDIATE ORDER
Case No. 2:20-cv-01571

- 4 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

1    *Id.* at 2.

2    　　　S.L.C. thus went to Spain just after the court's ruling. From November 2018 through

3    March 2019, Mr. Colchester and S.L.C. moved to Vancouver, Canada. But S.L.C. stayed with

4    Ms. Lazaro in the United States almost exclusively during the five months Mr. Colchester

5    lived in Canada, in part because of S.L.C.'s attachment to Ms. Lazaro and extreme anxiety

6    about staying with Mr. Colchester and refusal to go with him for visits. *See* Lazaro Decl.

7    ¶¶ 27–30. In March 2019, Mr. Colchester absconded with S.L.C. from Washington to Ireland,

8    then Spain, leading to extreme separation anxiety for both Ms. Lazaro and S.L.C. *Id.* ¶¶ 31; 39.

9    In May 2019, a Spanish court awarded shared custody to the two parents in Spain. *Id.* Ex. 31.

10   But by January 2020, the court modified the ruling given Ms. Lazaro's inability to live in

11   Spain. *See id.* ¶ 32 & Dkt. 23-1 (Ex. D). The court noted that "numerous moves" had

12   contributed to instability for S.L.C. Dkt. 23-1 at 20.

13   　　　Despite Mr. Colchester's false claim that he and S.L.C. have resided "exclusively" in

14   Spain until 2020, S.L.C. has in fact lived in the United States and Spain for around the same

15   amount of time. Lazaro Decl. ¶ 39.

16   　　　Throughout S.L.C.'s life, Ms. Lazaro has been her primary caregiver. *Id.*; Wolfe Decl.,

17   Ex. 1 ¶ 7. And others have noticed both S.L.C.'s attachment to Ms. Lazaro and her apparent

18   unease about her time with Mr. Colchester. *See, e.g.*, Lazaro Decl. ¶ 29 & Ex. A.

19   **B.    Mr. Colchester abuses S.L.C. after she goes with him to Spain.**

20   　　　Although the Spanish court's custody order provided that S.L.C. would reside with

21   Ms. Lazaro over the Easter holiday, Dkt. No. 23-1 (Ex. D) at 22, in March 2020,

22   Mr. Colchester informed Ms. Lazaro that he would not bring S.L.C. to the U.S. as required by

23   the ruling, *see* Lazaro Decl. ¶ 33. After Ms. Lazaro flew to Spain to be with her daughter,

24   Mr. Colchester refused to let Ms. Lazaro even see S.L.C. And after waiting for 24 hours in

25   case Mr. Colchester changed his mind, Ms. Lazaro had to fly back to the U.S. But within two

26   hours of landing back home, Mr. Colchester informed Ms. Lazaro that he would now let her

27   see their daughter if she came back to Spain. *Id.* Complying with Mr. Colchester's insistence

28

OPPOSITION TO MOTION FOR
IMMEDIATE ORDER
Case No. 2:20-cv-01571

- 5 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

that Ms. Lazaro stay with him or he would not let her see her daughter, she arrived back in

Spain at the end of that month. *Id.* Throughout her stay, Mr. Colchester was volatile and

aggressive toward both Ms. Lazaro and S.L.C. He drank alcohol and smoked marijuana every

day with his friend who lived with him, and Ms. Lazaro learned from S.L.C. that he did this

every night in front of their young child. *Id.*

S.L.C. had complained that Mr. Colchester had hit her before. *Id.* ¶ 30 & Ex. B

(recording beginning at 00:01:59). But the situation became dire during Ms. Lazaro's visit to

Spain in March and April of this year. During that visit, Ms. Lazaro saw Mr. Colchester hit

S.L.C. on the head, kick her as she walked past him, and threaten to throw her out the window

or rip her ear off if she misbehaved. *Id.* ¶ 34.

On April 2, when S.L.C. told Mr. Colchester that she had cleaned the sink, he screamed

at her for interrupting his call, grabbed her arm, and physically threw her out of his room—

Ms. Lazaro found her crying on the floor with a fresh bruise on her arm; Mr. Colchester

became angry with Ms. Lazaro for comforting the young child. *Id.* ¶ 35. Four days later,

Mr. Colchester threatened to kick S.L.C. down the stairs after she interrupted him while he

was on a phone call. Indeed, he did kick her, but Ms. Lazaro grabbed S.L.C. after she fell a

few steps and fled with her to a bedroom to hide from Mr. Colchester's attack. *Id.* As

Mr. Colchester screamed, Ms. Lazaro called her attorney in Spain and asked her to call the

police. *Id.* On hearing that the police would become involved, Mr. Colchester demanded that

Ms. Lazaro leave, which she insisted she would not do without bringing S.L.C. with her. *Id.*

Despite Mr. Colchester's threats to report her for child abduction, Ms. Lazaro, consistent with

advice from police, left the home with S.L.C. as Mr. Colchester watched. *See id.*

After this incident, Ms. Lazaro spoke to the Spanish police, who advised her to stay

with a friend and not return to Mr. Colchester's home. *Id.* But because of the COVID-19

pandemic, Ms. Lazaro and S.L.C. ultimately stayed in a hotel in Spain. *Id.* ¶ 36. While staying

at the hotel, a pair of psychologists evaluated both S.L.C. and Ms. Lazaro. *Id.* The

psychologists used an interpreter because neither Ms. Lazaro nor S.L.C. speaks Spanish. *Id.*

OPPOSITION TO MOTION FOR
IMMEDIATE ORDER
Case No. 2:20-cv-01571

- 6 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

1

2

3

4

5

6

7

8

9

10

11 [redacted]. *Id.*

12 at 8.

13       Fearing for S.L.C.'s safety, Ms. Lazaro then took her back to Washington. *Id.* ¶ 36.

14 **C.**     **Ms. Lazaro's tries to protect herself and S.L.C. and Mr. Colchester launches this action.**

15

16       Once she was back in the U.S., Ms. Lazaro tried to protect herself and S.L.C. from

17 Mr. Colchester. To do so, she almost immediately sought an order of protection for herself and

18 S.L.C. in Snohomish County Superior Court. Dkt. No. 23-1 (Ex. J) at 67. The court, however,

19 ultimately dismissed that petition for lack of jurisdiction. *Id.* (Ex. L) at 111–14.

20       Without the aid of counsel, Ms. Lazaro next sought similar protections from King

21 County Superior Court. Dkt. No. 23-1 (Ex. N) at 118. At that time, Ms. Lazaro had not yet

22 been served with, or accepted service of, the petition that initiated this case. *See* Dkt. No. 1.[2]

23 After a hearing at which Ms. Lazaro was represented by new pro bono counsel who did not

24 appear for Ms. Lazaro until after she filed the petition pro se, the King County Superior Court

25 ────────────────────

26 [2] In fact, despite originally filing the petition in July, Mr. Colchester said nothing of it to Ms. Lazaro during their communications until after she sought relief in King County Superior Court in September 2020. There is no truth to Mr. Colchester's unsupported claim (Mot. at 5) that Ms. Lazaro deliberately omitted this action—with which she had not been served—or the Snohomish County domestic violence case—which had been dismissed—from her filing in King County. Ms. Lazaro was pro se. She did not realize that a case that was no longer pending or a case that lacked knowledge of needed to be disclosed. Lazaro Decl. ¶ 38.

27

28

OPPOSITION TO MOTION FOR
IMMEDIATE ORDER
Case No. 2:20-cv-01571

- 7 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington 98104-7097
+1 206 839 4300

1   also dismissed Ms. Lazaro's petition for want of jurisdiction. *See* Dkt. 23-1 (Ex. P) at 167–68.

2   The court declined to award attorneys' fees because Ms. Lazaro had recently obtained counsel.

3   *Id.* at 168.

4          Mr. Colchester started this action in Snohomish County Superior Court in July. Dkt.

5   No. 1 at 1. On learning of this action, Ms. Lazaro sought legal counsel. After identifying

6   counsel to assist her on a pro bono basis in this matter, Ms. Lazaro accepted service of the

7   petition and removed this matter to this Court. *See* Dkt. No. 1 at 1–2.

8          Next, the parties negotiated a stipulation—which the Court entered—placing S.L.C. in

9   the temporary care of Mr. Colchester's agent (Ms. Lazaro's mother) while this case proceeds.

10  Dkt. Nos. 13–14. While the parties were negotiating that stipulation, Mr. Colchester's counsel

11  never conferred with Ms. Lazaro's counsel about this motion. Wolfe Decl. ¶ 5.

12         Ms. Lazaro intends to present witnesses to attest to S.L.C. habitual residence and the

13  grave risk of harm that sending her to Spain would entail, which includes Mr. Colchester's

14  violent abuse and dangerous lifestyle as well as S.L.C.'s profound attachment to Ms. Lazaro

15  and the harm of living without her.

16  ### III.   ARGUMENT

17  **A.    Mr. Colchester's motion is a disguised request for summary judgment, which
        must be denied when genuine disputes of material fact exist.**

18

19         Mr. Colchester identifies no provision of the Federal Rules of Civil Procedure

20  governing this Court's consideration of his request. But in another Hague Convention case

21  filed in this District, Judge Jones rejected the petitioner's effort to circumvent the normal

22  process for deciding disputed factual issues "regarding the merits of [his] prima facie case of

23  wrongful removal." Judge Jones instead observed that "the appropriate procedure for

24  requesting partial judgment as a matter of law is to file a motion for summary judgment."

25  *Garcia v. Duarte Reynosa*, 2020 WL 363404, at *3 (W.D. Wash. Jan. 22, 2020). So too here.

26         The approach taken by Judge Jones coheres with the Federal Rules of Civil Procedure,

27  which govern "all civil actions and proceedings in the United States district courts, except as

28

OPPOSITION TO MOTION FOR
IMMEDIATE ORDER                          - 8 -
Case No. 2:20-cv-01571

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington 98104-7097
+1 206 839 4300

1   stated in Rule 81." Fed. R. Civ. P. 1. Neither actions under the Hague Convention nor those

2   under the Act are among the listed exceptions. *See* Fed. R. Civ. P. 81. "[R]ule 56 provides the

3   means by which a party may pierce the allegations in the pleadings and obtain relief by

4   introducing outside evidence." 10A Charles Alan Wright et al., *Federal Practice and*

5   *Procedure* § 2712 (4th ed. April 2020 Update).

6          That is the approach that the Ninth Circuit and courts within it have taken in the face of

7   disputed facts. *See, e.g.*, *In re Tsarbopoulos*, 243 F.3d 550, at *1–2 (9th Cir. 2000)

8   (unpublished) (reversing summary judgment over disputed facts on the children's habitual

9   residence and whether there would be a grave risk from returning them to Greece and

10  reassigning matter to a different district judge on remand to avoid the suggestion "that the

11  outcome has been predetermined"); *MacFarlane v. MacFarlane*, 2018 WL 4150966, at *1

12  (W.D. Wash. July 24, 2018) (denying cross-motions for summary judgment in Convention

13  case when "[e]ven cursory review of the record submitted reveals issues of fact" on children's

14  habitual residence); *Weintraub v. Waite*, 2013 WL 6622899, at *2 (W.D. Wash. Dec. 16,

15  2013) (denying summary judgment to petitioner when fact issues existed on whether children

16  would face a grave risk of harm if returned to Sweden).

17         To expeditiously resolve disputes under the Convention, courts—including this

18  Court—use several techniques. The Court may, for instance, allow a magistrate judge to

19  preside over an evidentiary hearing if that would "best reconcile the need for a presentation of

20  live testimony with the Hague Convention's policy favoring the speedy review of petitions."

21  *Holder v. Holder*, 2003 WL 24091906, at *1 (W.D. Wash. June 13, 2003) (Coughenour, J.),

22  *aff'd*, 392 F.3d 1009 (9th Cir. 2004). Courts may also accelerate the timeframe for hearing

23  these disputes. *E.g.*, *Matovski v. Matovski*, 2007 WL 1575253, at *1, 3 (S.D.N.Y. May 31,

24  2007) (setting early hearing date to "balance the need for pre-hearing discovery and the need

25  for expeditious adjudication" and allowing testimony through videoconference). Yet they

26  routinely hear live testimony to decide contested facts. *See, e.g.*, *Farr v. Kendrick*, 824 F.

27  App'x 480, 482 (9th Cir. 2020) (affirming judgment for respondent under Convention when

28

OPPOSITION TO MOTION FOR
IMMEDIATE ORDER                                    - 9 -
Case No. 2:20-cv-01571

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

"district court conducted a three-day evidentiary hearing [and] consider[ed] numerous exhibits and testimony from many witnesses").

Here, the Court gave Mr. Colchester the exact tool he needed to secure a speedy outcome. It did so with its Order setting initial case management dates. Dkt. No. 5. That Order required the parties to confer and update the Court by mid-February on when this action would be ready for trial and how long a trial would take. *Id.* Nothing stopped Mr. Colchester from harnessing this Court-ordered process before the deadline. The parties could have—and still may—negotiate an expedited proposed hearing date, limited discovery, perpetuation depositions, or myriad other ways to resolve this quickly. Yet Mr. Colchester never started these discussions, even as he was apparently preparing this motion while the parties negotiated a stipulation that led to some of the relief he seeks here—placing S.L.C. in the temporary care of his designated agent. *Compare* Mot. at 1, *with* Dkt. Nos. 13–14.

Mr. Colchester overlooks these principles. He clings instead to *West v. Dobrev*, 735 F.3d 921, 929–30 (10th Cir. 2013).[3] *See* Mot. at 16–17. But that decision does not control. It omits any discussion of the Federal Rules, and (unlike here) the respondent there "never challenged any element of Petitioner's prima face case" and agreed with the petitioner on the children's habitual residence. *Id.* at 930. The district court there also held a preliminary hearing, at which the respondent never demanded an evidentiary hearing, noted that his own expert psychologist was unwilling to testify, and hesitated to agree to the court's interviewing the minor children. *Id.* at 928–29. Here, by contrast, Ms. Lazaro sharply disputes that Spain is S.L.C.'s habitual residence and seeks a hearing to present testimony—which no court has considered—about S.L.C.'s habitual residence and Mr. Colchester's abuse of S.L.C. And the only court within this circuit to have relied on *West* was in this District, when Judge Jones merely noted his authority to allow telephonic testimony at an evidentiary hearing earlier this year. *See Garcia v. Duarte Reynosa*, 2020 WL 777247, at *1 & n.1 (W.D. Wash. Feb. 18,

---

[3] *March v. Levine*, 249 F.3d 462, 474 (6th Cir. 2001), which *West* invokes, affirmed summary judgment. It thus only reinforces Ms. Lazaro's view of the proper procedural vehicle for Mr. Colchester's requested relief.

OPPOSITION TO MOTION FOR
IMMEDIATE ORDER                    - 10 -
Case No. 2:20-cv-01571

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

2020).[4] The issue is thus whether Mr. Colchester has a right to summary judgment based on a single declaration—his own—which ignores a host of disputed factual issues.

He does not. When considering a motion for summary judgment, the Court determines, after viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine disputes of material fact and whether the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Frudden v. Pilling*, 877 F.3d 821, 828 (9th Cir. 2017). The moving party bears the burden of proving the lack of a genuine dispute, after which the nonmoving party must come forward with evidence showing one. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). In deciding whether summary judgment is proper, "[t]he evidence of the nonmovant is to be believed, and all justifiable inference are to be drawn in [her] favor." *Id.* at 255. The Court should "not weigh the evidence or determine the truth of the matter, but only determine[] whether there is a genuine issue for trial." *Balint v. Carson City*, 180 F.3d 1047, 1054 (9th Cir. 1999). As the Ninth Circuit confirmed in reversing the grant of summary judgment for a petitioner in a Hague Convention case, "the strength of disputed evidence is not the dispositive issue …. Rather, the salient question is whether genuine issues of material fact exist." *In re Tsarbopoulos*, 243 F.3d 550, at *1.

Because such issues exist here, Mr. Colchester's motion cannot succeed.

**B.     Because of an intervening change in governing law and factual questions unanswered in prior litigation, those actions do not control the outcome here.**

Mr. Colchester's argument for dispositive rulings in his favor on S.L.C.'s habitual residence turns largely on the decisions of other courts, the preclusive effect of which he nowhere even asserts, much less establishes.[5] Instead, he plucks snippets of prior rulings out of

---

[4] Mr. Colchester also tries to prop up his demand to skip these proceedings by asserting without authority that, because the Convention is "a treaty between sovereign states," it is "entitled to the same weight and deference as the Constitution of the United States." Mot. at 6. This assertion flouts decades of jurisprudence. *See, e.g.*, *Reid v. Covert*, 354 U.S. 1, 17 (1957) ("This Court has regularly and uniformly recognized the supremacy of the Constitution over a treaty.").

[5] Mr. Colchester's motion just describes—often erroneously—the rulings of prior courts, without providing the doctrines or authorities under which those decisions could bind this Court. *See, e.g.*, Mot. at 4–6, 11, 14–15. He has therefore waived any argument for preclusion. *See Jones v. Wood*, 206 F.3d 557, 562 n.2 (9th Cir. 2000) ("[F]ailure to argue an issue in the opening brief … constitute[s] waiver."). Even so, Ms. Lazaro shows here that no prior decisions dispose of her assertions.

OPPOSITION TO MOTION FOR
IMMEDIATE ORDER                    - 11 -
Case No. 2:20-cv-01571

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

context—or simply misdescribes them—to insinuate that other courts have addressed Ms. Lazaro's concerns. They have not. The doctrine of issue preclusion does not apply: None of the decisions Mr. Colchester relies on involved final rulings on the merits of issues identical to those in question here.

Federal courts "must give state court judgments the preclusive effect that those judgments would enjoy under the law of the state in which the judgment is rendered." *Clark v. Bear Stearns & Co., Inc.*, 966 F.2d 1318, 1320 (9th Cir. 1992). Under Washington law, the party invoking issue preclusion must show that (1) a prior adjudication decided the identical issue, (2) the prior adjudication led to a final judgment on the merits, (3) collateral estoppel is asserted against the same party to the prior adjudication, and (4) precluding relitigation of the issue will not work an injustice. *Christensen v. Grant Cty. Hosp. Dist. No. 1*, 152 Wash. 2d 299, 307, 96 P.3d 957 (2004). Mr. Colchester fails that test.

1. *The 2018 Hague Convention proceedings did not decide the facts supporting Mr. Colchester's current action.*

In March 2018, S.L.C. faced sexual touching by two young male children during what the school described as a "game" and part of its pedagogy. Conduct of this nature committed in any school within the United States would not be tolerated. Yet neither the school nor Mr. Colchester were willing to address Ms. Lazaro's concerns about her daughter's welfare. Lazaro Decl. ¶ 24. The next month, Ms. Lazaro took her daughter back to Washington. *Id.* In granting Mr. Colchester's August 2018 petition for S.L.C. return to Spain under the Convention, the Snohomish County Superior Court did not rely on the live testimony of either Mr. Colchester or Ms. Lazaro. *See id.*, Ex. 2 at 2. It found that Spain was S.L.C.'s habitual residence and that Ms. Lazaro had not presented evidence that returning S.L.C. would present a grave risk of harm. *Id.* at 2–3. But these findings do not control here.

***No identity of issues.*** To start, the 2018 Hague proceeding necessarily could not have decided any issue related to abuse of S.L.C. in 2020, two years after that litigation ended. Because the prior Hague action did not decide the identical issue to the one here, that decision

OPPOSITION TO MOTION FOR
IMMEDIATE ORDER
Case No. 2:20-cv-01571

- 12 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

cannot preclude a finding of grave risk by this Court. *See Christensen*, 152 Wash. 2d at 307.

*Change in applicable law.* Next, even the decision that Spain was S.L.C.'s habitual residence cannot bind this Court. First, the Snohomish County Superior Court handed down its decision in 2018, without the benefit of the U.S. Supreme Court's opinion this year in *Monasky v. Taglieri*, 140 S. Ct. 719, 723, 727–30 (2020). *Monasky* established that locating a child's habitual residence is a "fact-driven inquiry" and that "no single fact" is dispositive. *Id.* at 727. Instead, courts are to consider "the totality of the circumstances specific to the case. *Id.* at 723. It is blackletter law in Washington that "an intervening change in the applicable legal context … prohibits the application of collateral estoppel." *Dot Foods, Inc. v. State Dep't of Rev.*, 185 Wash. 2d 239, 256, 372 P.3d 747 (2016).

The prior Hague action did not apply *Monasky*'s standards. Washington state cases assessing habitual residence followed the Ninth Circuit's decision in *Mozes v. Mozez*, 239 F.3d 1067, 1082 (9th Cir. 2001)—which *Monasky* abrogated. *See Monasky*, 140 S. Ct. at 725–26 (describing *Mozes*'s emphasis on "the shared intentions of the parents" for deciding habitual residence); *In re Custody of A.T.*, 11 Wn. App. 2d 156, 164–65, 451 P.3d 1132 (2019) (Washington authority citing *Mozes* and describing the parents' shared intent as the "primary factor" for determining habitual residence); *In re Smith*, 185 Wn. App. 1020, at *4 (2015) (unpublished) (citing *Mozes* in discussing habitual residence). If the Court has any doubt on this score, it need only look to Mr. Colchester's memorandum in the prior action under the Convention, whose discussion of habitual residence—a virtual carbon copy of his discussion in the present motion—nowhere articulated anything resembling *Monasky*'s totality-of-the-circumstances test. *See* Dkt. No. 12, Ex. 3 (filed under seal) at 2–3. The prior action did not decide S.L.C.'s habitual residence under the standards the Supreme Court articulated just this year. So giving preclusive effect to the prior action's determination of S.L.C.'s habitual residence is "prohibit[ed.]" *Dot Foods*, 185 Wash. 2d at 256.

*Adverse effects on S.L.C. and the public interest.* Even if it were otherwise, Washington courts do not apply issue preclusion when an adverse effect on the public interest

OPPOSITION TO MOTION FOR
IMMEDIATE ORDER
Case No. 2:20-cv-01571

- 13 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

1    outweighs the benefit of finality. *See Dana's Housekeeping, Inc. v. Dep't of Labor*, 76 Wn.

2    App. 600, 612, 886 P.2d 1147 (1995). Similarly, the Restatement (2d) of Judgments, cited

3    often by Washington courts, *see, e.g.*, *id.*, notes that preclusion is improper when there is clear

4    need for to avoid burdening third parties to the original action, *see* Restatement (2d) of

5    Judgments § 28 (1982). Here, S.L.C is herself a third party, and it harms the public interest to

6    apply collateral estoppel in the face of changed law when doing so could mean that a U.S.

7    citizen minor will be sent—without her primary caregiver—to a foreign country where she can

8    face abuse.

9        This Court should thus assess S.L.C.'s habitual residence on a clean slate, applying

10   *Monasky*'s standards.

11           2.      *The Snohomish County domestic violence decision was not a final judgment on
                     the merits and did not decide issues identical to those in question here.*
12

13       Next, Mr. Colchester faults Ms. Lazaro for seeking to protect herself from his abuse.

14   But the dismissals of the domestic violence cases cannot secure him relief.

15       ***No identity of issues.*** The issues in those cases were not identical to those here, as

16   Washington law mandates for preclusion. Mr. Colchester contends that the Snohomish County

17   Superior Court to which Ms. Lazaro first turned "found her allegations of abuse were *not*

18   credible." Mot. at 15. Not so. In fact, the court assessed whether there was evidence of abuse

19   *in Washington* that would have justified exercising personal jurisdiction over Mr. Colchester.

20   *See* Dkt. 23-1 (Ex. L) at 112–13 (finding no "credible allegations of any acts of domestic

21   violence that occurred between the parties *in Washington*" and no threats of violence or

22   stalking "after [Ms. Lazaro] left Spain"). Mr. Colchester's reference to RCW 26.27.231 is a

23   dead end. Mot. at 4–5 & n.8. His briefing in that case confirms at least three times that the lack

24   of evidence of domestic violence *in Washington* drove the outcome, no matter what happened

25   in Spain, and that jurisdiction over the child was barred by the existence of Spain as her "home

26

27

28

OPPOSITION TO MOTION FOR
IMMEDIATE ORDER                           - 14 -
Case No. 2:20-cv-01571

country" under a statute different from the Act here. *See* Wolfe Decl., Ex. 4 at 4, 6, 8–9.[6] Thus, the issues decided in Snohomish County Superior Court are not identical to those here.

*No final judgment on the merits.* Even if they were, the dismissal turned on lack of personal jurisdiction, as Mr. Colchester concedes. Mot. at 4; Dkt. No. 23-1 (Ex. L) at 112–13. Washington law makes plain that "a dismissal for lack of personal jurisdiction … is a dismissal without prejudice, whereas [summary judgment] is a dismissal on the merits which if affirmed would have preclusive effect." *Modumental, Inc. v. Xtalic Corp.*, 4 Wn. App. 2d 810, 835, 425 P.3d 871 (2018); *see also* Wash. Civ. R. 41(b)(3) (distinguishing dismissals "for lack of jurisdiction" and "improper venue" from "adjudication[s] on the merits"). The decision is therefore not a final judgment on the merits, as it must be to have preclusive affect. *See Christensen*, 152 Wash. 2d at 307. Having drafted the order that the Snohomish County court signed, *see* Dkt. 23-1 at 115 (noting that Mr. Colchester's counsel presented the proposed order), Mr. Colchester may not now complain that the findings he asked for bar preclusion.

3.  *Nor was the King County domestic violence decision a final judgment on the merits addressing identical issues to the ones in play here.*

The same analysis applies to Ms. Lazaro's efforts to secure an order of protection in King County Superior Court.

*No identity of issues.* That decision found no acts of violence "since the Snohomish County matter was dismissed on July 24, 2020 that would give this court jurisdiction." Dkt. 23-1 (Ex. P) at 167. It made no findings on whether Mr. Colchester had abused S.L.C. in Spain or whether she faced a grave risk of similar abuse in the future. Even the purported finding that Spain has jurisdiction over the case was based on the previous rulings of the Snohomish County Superior Court. *See id.* at 168. The issues were yet again not identical to those here.

*No final judgment on the merits.* And once more, the ruling—again drafted by Mr. Colchester's counsel—turned on a lack of personal jurisdiction, which the King County Superior Court stated repeatedly. *Id.* at 167–68. This lack of a final judgment on the merits

---

[6] Nor is there any showing that the Snohomish County court's "finding" that Spain is the child's habitual residence was actually litigated or necessary to the decision, which itself relied on the 2018 Convention case's findings for much of its jurisdictional analysis.

OPPOSITION TO MOTION FOR
IMMEDIATE ORDER
Case No. 2:20-cv-01571                          - 15 -                ORRICK, HERRINGTON & SUTCLIFFE LLP
                                                                         701 Fifth Avenue, Suite 5600
                                                                         Seattle, Washington  98104-7097
                                                                             +1 206 839 4300

1    provides yet another reason collateral estoppel cannot apply.

2        4.    Mr. Colchester has not carried his burden to prove the preclusive effect of any
3              proceeding in Spain.

4        Nor has Mr. Colchester proven what preclusive effect issues decided by Spanish courts

5    have on future proceedings. It is not even clear that the courts of Spain—a civil-law

6    jurisdiction—recognize our form of collateral estoppel—a common-law doctrine. And

7    Mr. Colchester makes no such argument in his motion, thus waiving it. *See Jones*, 206 F.3d at

8    562 n.2. In any event, preclusion does not apply because the April 2020 Spanish court order

9    that Mr. Colchester describes does not say what he claims it does. Mr. Colchester erroneously

10   states that "in April 2020, the Spanish Courts issued an order that declared that Spain is the

11   child's habitual residence, and that the child's removal from her habitual residence by

12   Ms. Lazaro was illegal." Mot. at 4. But the Court would search the April 2020 order in vain for

13   either ruling.

14       In fact, the Spanish court merely notes Mr. Colchester's claim of an "alleged abduction

15   of his young daughter from his place of residence (this is habitually in the city of Barcelona

16   and more occasionally and owing to the lockdown, in Olesa de Montserrat) …." Dkt. No. 23-1

17   (Ex. Q)[7] at 172. The court then recognizes a prima facie case that Mr. Colchester had custody

18   of S.L.C. *Id.* No statement on habitual residence other than merely describing Mr. Colchester's

19   claim (of his own residence no less), and no finding of wrongfulness. There is no hint that an

20   evidentiary hearing took place or that the issue was actually litigated—how could it have been

21   when it appears on its face to have issued ex parte? Nor is there any suggestion that it is a final

22   ruling on the merits. This "ruling" has none of the hallmarks of a decision with preclusive

23   effect. *See, e.g.*, Restatement (2d) of Judgments § 27 (1982). So it does not control.

24   **C.    Because there are genuine disputes over S.L.C.'s habitual residence—a "fact-**
25       **driven inquiry"—summary judgment is improper.**

26       Without the benefit of issue preclusion, the question becomes whether Mr. Colchester

27

28   [7] Mr. Colchester cites the wrong exhibit to his declaration, referring to Exhibit D. *See* Mot. at 4 n.6. But that is the
     January 2020 Spanish custody order, not the April 2020 order. *See* Dkt. No. 23-1 at 16.

OPPOSITION TO MOTION FOR
IMMEDIATE ORDER                                      - 16 -
Case No. 2:20-cv-01571

has shown he has a right to judgment as a matter of law. The answer is no. Turning first to S.L.C.'s habitual residence, a bevy of disputed facts bars summary judgment.

Under the Convention, "a child wrongfully removed from her country of 'habitual residence' ordinarily must be returned to that country." *Monasky*, 140 S. Ct. at 723. It is thus unsurprising that the Ninth Circuit has identified "the habitual residence" determination as "perhaps the most important inquiry under the Convention." *Murphy v. Sloan*, 764 F.3d 1144, 1150 (9th Cir. 2014) (quotation omitted). As discussed above, the analysis is a "fact-driven inquiry" and "no single fact" is dispositive. *Monasky*, 140 S. Ct. at 727. Instead, courts must consider "the totality of the circumstances specific to the case. *Id.* at 723.

Applying *Monasky*, the Ninth Circuit has affirmed a finding that a child was habitually resident in the United States. *See Farr*, 824 F. App'x at 481–82. Like S.L.C., the children in *Farr* were U.S. citizens. *Id.* at 482. Just as S.L.C. speaks little Spanish and almost no Catalan, the children in *Farr* did not speak Spanish. *Id.* There, as here, the children had lived in the U.S. for extended periods. *Id.* Ms. Lazaro and her family (with whom S.L.C. is close) are all U.S. citizens who live here, and Ms. Lazaro repeatedly asked Mr. Colchester to allow her to stay in the U.S. with S.L.C. *Compare* Lazaro Decl. ¶¶ 7, 16, 19, 20, 22, *with Farr*, 824 F. App'x at 482. Earlier Ninth Circuit decisions have affirmed other judgments on lack of habitual residence abroad on similar facts. *See, e.g.*, *Papakosmas v. Papakosmas*, 483 F.3d 617, 625–28 (9th Cir. 2017) (affirming finding that children's habitual residence was not Greece when mother never manifested an intent to permanently relocate there but only an intent to live there conditionally for a trial period, the parents did not jointly establish a home in Greece, the children did not speak Greek, showed emotional distress about living in Greece, and moved around between homes in Greece, and mother brought children home to United States periodically).

Other facts also undermine the claim that Spain is S.L.C.'s habitual residence. She was not born in Spain, for instance, and neither she nor her parents hold citizenship there. When evaluated by psychologists and ███████████████████████████████████

OPPOSITION TO MOTION FOR
IMMEDIATE ORDER
Case No. 2:20-cv-01571

- 17 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington 98104-7097
+1 206 839 4300

███████████████████████████████████████████████

███████████████ Lazaro Decl., Ex. D at 8–9. Ms. Lazaro (sometimes with Mr. Colchester) has resided in Washington with S.L.C. for months-long periods in 2015, 2016, 2018, 2019, and 2020 before bringing her back here in April. All told, S.L.C. has lived nearly as much of her life in the United States as she has in Spain, if not more. *See id.* ¶ 39.

So Mr. Colchester's assertion that he and S.L.C. "resided exclusively in Barcelona, Catalonia, Spain until Ms. Lazaro abducted" S.L.C. is simply false. *Cf.* Mot. at 8. Indeed, even S.L.C.'s time in Spain tracks the Supreme Court's reasoning that courts should account when "an infant lived in a country only because a caregiving parent had been coerced into remaining there." *Monasky*, 140 S. Ct. at 727. That is the case here. And there is more. Ms. Lazaro, who does not speak Spanish or Catalan, also lacks authorization to work in Spain and cannot remain there indefinitely without financial support from Mr. Colchester, her abuser. Lazaro Decl. ¶¶ 12, 20–22. She is S.L.C.'s primary caregiver—Mr. Colchester has relied on a nanny and her school as a form of childcare when Ms. Lazaro is not present. *Id.* ¶ 39.

As a result, the totality of the circumstances shows that S.L.C.'s habitual residence is the United States, not Spain. At a minimum, there is a triable issue of fact on this question. *See, e.g.*, *In re Tsarbopoulos*, 243 F.3d 550, at *1 (reversing summary judgment on habitual residence when respondent submitted affidavit attesting, among other things, that she never intended to live permanently in Greece, that she retained her U.S. citizenship, and that the children's acclimatization in Greece was contested); *MacFarlane*, 2018 WL 4150966, at *1 (denying cross-motions for summary judgment in Convention case when "[e]ven cursory review of the record submitted reveals issues of fact" on children's habitual residence).

These factual disputes doom Mr. Colchester's motion and will ultimately doom his efforts to have S.L.C. returned to Spain.

**D.    Genuine disputes over whether returning S.L.C. to Spain would pose a grave risk of harm preclude summary judgment.**

There is also a genuine dispute over the risk that S.L.C. would face if returned to

OPPOSITION TO MOTION FOR
IMMEDIATE ORDER
Case No. 2:20-cv-01571

- 18 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

Spain. Unlike the 2018 proceedings under the Convention, in which Mr. Colchester's abuse of Ms. Lazaro was chiefly at issue, the risk analysis now centers on Mr. Colchester's violent abuse of S.L.C. herself. Given her trauma at the hands of her father, her close attachment to Ms. Lazaro, and her diagnosed separation anxiety resulting from the time she was forced to be alone with Mr. Colchester, S.L.C. would face a grave risk of physical or psychological harm if she were sent to Spain. Summary judgment is thus improper.

Article 13(b) of the Convention reflects an exception to the general obligation to return children to their place of habitual residence when doing so would place them at a "grave risk" of harm or otherwise in "an intolerable situation." *Monasky*, 140 S. Ct. at 723. This exception is the Convention's "mechanism for guarding children from the harms of domestic violence." *Id.* at 729. The Ninth Circuit has reversed summary judgment when the respondent provided evidence, which must be believed, that her children had been abused, along with psychologists' reports. *See In re Tsarbopoulos*, 243 F.3d 550, at *2. So have courts within this District. *See, e.g.*, *Weintraub*, 2013 WL 6622899, at *2. This Court should reach the same result.

Ms. Lazaro saw Mr. Colchester try to kick S.L.C. down the stairs and physically throw her out of his room. She saw him scream at her and threaten her. And she's seen years of S.L.C.'s extreme discomfort whenever she has to leave Ms. Lazaro. Lazaro Decl. ¶¶ 36–37, 39. S.L.C. herself has disclosed that Mr. Colchester had hit her, had thrown her out of a first-floor kitchen window and left her outside all day without food, and that she was afraid of her father. *Id.* ¶¶ 36. Combined with the psychological harm that would result from S.L.C.'s witnessing Mr. Colchester's abuse of Ms. Lazaro, the grave risk cannot be decided on summary judgment.

Mr. Colchester's motion thus fails.[8]

---

[8] Ms. Lazaro also reserves her right to argue that removing S.L.C. to Spain would violate fundamental principles on protecting human rights and fundamental freedoms under Article 20 of the Convention.

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

**E.     Even if the Court adopted Mr. Colchester's summary procedure, the motion would lack merit.**

Finally, Mr. Colchester's motion fails on its own terms. Even if the Court decided that summary adjudication were proper on this record, Mr. Colchester could not secure the relief he seeks. He fails to meet his burden to show that Spain is S.L.C.'s habitual residence. And even if he could satisfy that burden, Ms. Lazaro has shown by clear and convincing evidence that S.L.C. would face a grave risk of harm if taken back to Spain, justifying an order denying the petition.

Turning first to habitual residence, Mr. Colchester has not made the required showing. His evidence is limited to the false claim that S.L.C. "resided exclusively in Barcelona, Catalonia, Spain" until this year and a pre-*Monasky* finding of the Snohomish County Superior Court that did not apply the current law. Mot. at 8. The record does not support that finding.

S.L.C.'s habitual residence is instead the United States. She is a citizen here, but not there. She speaks the language here, but not there. She considers this country her home. And her primary caregiver is a U.S. citizen without the language skills or work permits to live and work in Spain. She has also spent almost as much time in the United States as in Spain, and much of her time in Spain was because her father coerced her mother into living there. Those facts track those that the district court in *Farr* and *Papakosmas* considered enough to deny a petition under the Convention. *See Farr*, 824 F. App'x at 481–82; *Papakosmas*, 483 F.3d at 625–28. So too here.

But not even a finding for Mr. Colchester on habitual residence would warrant granting his petition. Because Ms. Lazaro satisfies her burden to prove a grave risk of harm, the Court should deny the motion under Article 13(b) of the Convention as well.

On remand from the Ninth Circuit, *Tsarbopoulos v. Tsarbopoulos* noted that "[s]pousal abuse … is a factor to be considered in" determining whether the Article 13(b) exception to removal applies "because of the potential that the abuser will also abuse the child." 176 F. Supp. 2d 1045, 1057–58 (E.D. Wash. 2001). Here, unlike in the prior Convention case

OPPOSITION TO MOTION FOR
IMMEDIATE ORDER
Case No. 2:20-cv-01571

- 20 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

1    involving the parties and as in *Tsarbopoulos*, there is evidence of both spousal abuse and child

2    abuse, and the Court should "consider the effect of both forms of abuse on the child[] in"

3    assessing the grave risk exception. *Id.* at 1258. And as in that case, expert analysis and the

4    child's own account confirm Mr. Colchester's physical abuse of S.L.C. *Id.* at 1059–60. What

5    Ms. Lazaro saw in Spain—kicking S.L.C. and threatening to throw and otherwise injure her—

6    is itself enough to show a grave risk of harm. And just as in *Tsarbopoulos*, Ms. Lazaro "has no

7    resources which would enable her to live in [Spain], she lacks language skills, would be quite

8    likely unemployable, has no place to live and there is no evidence that there are government

9    benefit programs which would supply financial or other support for her as spouse who has

10   been subject to spousal abuse." *Id.* at 1061. The record supports denying the petition.

11         The Court would reach the same result following the reasoning of *Espinosa-Cisneros v.*

12   *Solis-Lopez*, 2016 WL 7428233, at *2–3, 15–17 (D. Nev. Dec. 14, 2016), *report and*

13   *recommendation adopted,* 2017 WL 1025175 (D. Nev. Mar. 16, 2017). There, as here, the

14   petitioning father abused and threatened to harm the respondent mother, including while she

15   was pregnant, the mother reported the abuse to authorities abroad without obtaining

16   meaningful relief, and the father hit the child. *See id.* at *3. The facts here justify similar relief.

17         Mr. Colchester's motion cannot survive this analysis.

### IV.    CONCLUSION

19         Mr. Colchester had every chance—through the mechanism that the Court provided—to

20   meet and confer with Ms. Lazaro and submit a status report requesting an expedited hearing

21   schedule. He chose not to avail himself of that process, instead springing this motion on

22   Ms. Lazaro without warning at the start of the case, preparing it even as the parties were

23   negotiating a stipulation on the temporary care of S.L.C. in good faith. Ms. Lazaro asks the

24   Court not to bless these tactics.

25         The parties dispute the facts surrounding Mr. Colchester's abuse of both Ms. Lazaro

26   and S.L.C. The parties also disagree over the psychological harm facing S.L.C.—a U.S.

27   citizen—if she is forcibly separated from her mother and returned to a country whose language

28

OPPOSITION TO MOTION FOR
IMMEDIATE ORDER
Case No. 2:20-cv-01571                          - 21 -                ORRICK, HERRINGTON & SUTCLIFFE LLP
                                                                              701 Fifth Avenue, Suite 5600
                                                                            Seattle, Washington  98104-7097
                                                                                   +1 206 839 4300

1   she does not speak and whose citizenship she does not hold. Ms. Lazaro therefore requests that

2   the Court deny Mr. Colchester's disguised motion for summary judgment so that it can

3   adjudicate these disputes through an evidentiary hearing.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO MOTION FOR
IMMEDIATE ORDER                                          - 22 -
Case No. 2:20-cv-01571

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

1    Dated: December 7, 2020

2                                              ORRICK, HERRINGTON & SUTCLIFFE LLP

3                                              By:   /s/ John W. Wolfe
                                                    _____

4                                                   John W. Wolfe (WSBA No. 8028)
                                                    Lily Becker (WSBA No. 54479)
5                                                   Aaron P. Brecher (WSBA No. 47212)
                                                    Melanie D. Phillips (WSBA No. 48945)
6
                                                    701 Fifth Avenue, Suite 5600
7                                                   Seattle, WA 98104-7097
                                                    Telephone: +1 206 839 4300
8                                                   Facsimile: +1 206 839 4301
                                                    jwolfe@orrick.com
9                                                   abrecher@orrick.com
                                                    mphillips@orrick.com
10

11                                                  Caitlin Sheard
                                                    (*Pro Hac Vice* Application Forthcoming)
12                                                  Shane McCammon
                                                    (*Pro Hac Vice* Application Forthcoming)
13
                                                    Columbia Center
14                                                  1152 15th Street N.W.
                                                    Washington, D.C. 20005-1706
15                                                  Telephone: +1 202 339 8400
                                                    Facsimile: +1 202 339 8500
16                                                  csheard@orrick.com
                                                    smccammon@orrick.com
17

18                                                  Alison Epperson
                                                    (*Pro Hac Vice* Application Forthcoming)
19                                                  Ciarra Carr
                                                    (*Pro Hac Vice* Application Forthcoming)
20
                                                    51 West 52nd Street
21                                                  New York, NY 10019-6142
                                                    Telephone: +1 212 506 5000
22                                                  Facsimile: +1 212 506 5151
                                                    aepperson@orrick.com
23                                                  ccarr@orrick.com

24

25

26

27

28

OPPOSITION TO MOTION FOR
IMMEDIATE ORDER                          - 23 -
Case No. 2:20-cv-01571

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICE OF SHIRA KAUFMANN PLLC

By:  _/s/ Shira Kaufman_

    Shira Kaufman (WSBA No. 54447)

    2811 E. Madison Street, Suite 202
    Seattle, WA 98112
    Telephone: +1 206 880 0674
    Facsimile: +1 206 548 4109
    shirak@shirakaufmanlaw.com

_Attorneys for Respondent_

OPPOSITION TO MOTION FOR
IMMEDIATE ORDER
Case No. 2:20-cv-01571

- 24 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300