UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

Seth Basil Colchester,

          Petitioner,

    v.

Jewel Lazaro,

          Respondent.

CASE NO. C20-1571 MJP

ORDER ON PRETRIAL MOTIONS

This proceeding, brought under the Convention on the Civil Aspects of International Child Abduction regarding the minor child S.L.C., is before the Court on pretrial motions by both parties. (Dkt. Nos. 123, 127.) Having considered the motions, supporting declarations, and responses, (Dkt. Nos. 123–133), as well as the relevant record, the Court DENIES Petitioner's motion, (Dkt. No. 127), GRANTS Respondent's motion to the extent set forth in this Order, (Dkt. No. 123), and ORDERS the following:

- the Court finds this proceeding is not moot and that it has jurisdiction;
- Petitioner's motion to dismiss under Rule 41 is denied;

- Petitioner's motion to reinstate the fee award is denied;

- the Court will set this case for trial;

- S.L.C. shall be examined by a forensic psychologist for the purpose of determining whether there is a grave risk that being in Petitioner's custody and control will expose her to physical or psychological harm or would otherwise place her in an intolerable situation;

- Dr. Marsha Hedrick, a forensic psychologist licensed in Washington, shall conduct the examination;

- Petitioner shall bring S.L.C. to Washington to stay with S.L.C.'s maternal grandmother for three weeks for the examination.  S.L.C. shall be brought to and from examination sessions by someone other than Petitioner or Respondent;

- Dr. Hedrick shall be permitted to interview Petitioner and Respondent, in person, and any other person she determines is relevant for the examination, keeping in mind the expedited nature of these proceedings;

- Dr. Hedrick shall prepare a report with recommendations based on her examination, filed with the Court under seal before trial, and be prepared to testify as to her findings at trial.  In addition, before S.L.C. returns to Spain, Dr. Hedrick shall advise the Court whether S.L.C. should remain in Washington through trial and whether S.L.C. should testify;

- Petitioner shall retain S.L.C.'s passport during her stay in the United States;

- Respondent's request for additional discovery is granted.  The Parties shall submit a joint discovery plan for the Court's approval within 14 days of this Order.  The plan shall include a proposed three-week period for the psychological examination, a deadline for Dr. Hedrick's report, and dates for trial; and

- The Parties shall appear at a status conference, to be arranged by the Court, to resolve any remaining logistics that cannot be agreed to.

**Background**

Petitioner Seth Basil Colchester initiated this proceeding under the Convention on the Civil Aspects of International Child Abdution for an order returning his minor daughter, S.L.C., to his custody in Spain.  (Dkt. No. 1, Ex. 1 ("Petition").)  He claims S.L.C.'s mother, Respondent Jewel Lazaro, brought S.L.C. to Washington in violation of a Spanish custody order.

Respondent alleges that Petitioner has abused her and the child. Her central defense is that returning S.L.C. to Petitioner's custody would pose a grave risk of physical or psychological harm. (Dkt. No. 15 ("Answer") at 4.)

At the time of the petition, in July 2020, S.L.C. was in Washington with Respondent. Petitioner had custody under a Spanish order. He is an Irish citizen and permanent resident of Spain, while Respondent is a United States citizen. S.L.C. is a dual citizen of the United States and Ireland and a permanent resident of Spain. Respondent was visiting Petitioner and S.L.C. in April 2020, as the Covid-19 pandemic swept the globe. After what she alleges were incidents of domestic abuse, Respondent left Spain with S.L.C. and came to Washington.

After trial, the Honorable John C. Coughenour granted the petition and ordered S.L.C. returned to Spain, in February 2021. (Dkt. No. 87.) The Ninth Circuit reversed on two grounds, in October 2021. (Dkt. No. 111.) First, it held the Court abused its discretion by denying Respondent the opportunity to develop her defense of domestic abuse by having S.L.C. evaluated by a psychologist. Colchestr v. Lazaro, 16 F.4th 712, 723 (9th Cir. 2021). Second, it held the Court's findings and conclusions were inadequate under Rule 52 because they did not discuss Respondent's defense and merely adopted Petitioner's proposed findings verbatim. (Id. at 727.) The Ninth Circuit found the trial had been "fundamentally unfair" and remanded for a new trial and the appointment of a psychologist to examine S.L.C. Id. at 729.

After S.L.C. returned to Spain, and while the appeal was pending, the Spanish custody order was modified, in July 2021. Under the current order, Petitioner has custody and Respondent has visitation rights of one week per month, but visitation must occur in Spain. (Dkt. No. 124, Declaration of Aaron P. Brecher, Ex. 2 at 23.) Respondent also has visitation rights for half of each school break for Easter, summer, and Christmas. (Id. at 21.) Respondent

may not bring S.L.C. outside of Spain without Petitioner's consent. (Id. at 21–22.) Petitioner is required to bring S.L.C. to Washington once a year to spend time with Respondent's family. (Id. at 22.) At this time, Petitioner and S.L.C. reside together in Barcelona. Respondent lives in Washington but goes to Spain for one week each month for her visitation. S.L.C. is now seven. (See Answer ¶ 4.)

**Discussion**

There are motions by both parties before the Court. Petitioner moves to dismiss this proceeding on two grounds. Petitioner argues the case is moot, because S.L.C. has been returned to Spain. Alternatively, Petitioner moves to dismiss under Rule 41, by leave of court. Petitioner also asks the Court to reinstate the fee award the Ninth Circuit vacated.

Respondent asks the Court to set the case for trial, appoint a psychologist to examine S.L.C., and permit additional discovery. Respondent also requests the Court to order that the examination take place in Washington and that S.L.C. reside in Washington until a trial decision. Petitioner's position is that any psychological examination should take place in Spain and that S.L.C. must remain there.

**I.    Jurisdiction**

The Court addresses jurisdiction first. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94–95 (1998). Petitioner moves to dismiss for lack of subject-matter jurisdiction on the theory that this proceeding is moot because S.L.C. has been returned to Spain. The Court concludes this case is not moot because Respondent has a concrete interest in the outcome of the litigation. In particular, if she prevails on her defense, she could obtain a finding that S.L.C. is at grave risk of harm and an order that measures be taken in Spain to eliminate or reduce that risk.

### A. Legal Framework

The Convention on the Civil Aspects of International Child Abduction was adopted "to secure the prompt return of children wrongfully removed to or retained in any Contracting State" and "to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." Hague Convention, Oct. 25, 1980, art. 1., 19 I.L.M. 1501, 1501. A removal is "wrongful" if it breaches existing custody rights "under the law of the State in which the child was habitually resident immediately before the removal." Id. art 3(a). The United States ratified the treaty and passed implementing legislation, known as the International Child Abduction Remedies Act (ICARA), 22 U.S.C. §§ 9001, et seq.

The Convention's central mechanism—a petition for return—is designed to make sure custody rights are decided by courts in the child's home country. If a court finds a child's removal is wrongful, it generally must order the return of the child "forthwith." Courts deciding a petition do not determine custody rights. 22 U.S.C. § 9001(b)(4).

The court is not required to order the child's return if the respondent can establish one of the Convention's defenses. The main defense at issue here is for "grave risk" of harm to the child. The respondent must establish "there is a grave risk that [the child's] return would expose the child to physical or psychological harm or would otherwise place the child in an intolerable situation." Convention, art. 13(b), 19 I.L.M. at 1502. This defense reflects the reality that domestic violence can incite one parent to flee with the child, a decision that may be justified by the need to protect the child. See Colchester v. Lazaro, 16 F.4th 712, 717 (9th Cir. 2021).

The grave-risk defense is "narrowly drawn" and must be established by clear and convincing evidence. Id. at 718; 22 U.S.C. § 9003(e)(2)(A). In addition, even if the respondent establishes a grave risk of harm, the court may still order the child's return "if it determines there

are ameliorative measures that would 'allow both the return of the child[ ] to [his or her] home country and [the child's] protection from harm.' " Id. (quoting Gaudin v. Remis, 415 F.3d 1028, 1035 (9th Cir. 2005)).

In the Ninth Circuit, once a court has made a grave-risk finding, it must consider whether there are other measures that can be taken to eliminate the risk of harm before declining to order the child's return. Gaudin, 415 F.3d at 1035. This is because the Convention and ICARA "are based on the principle that the home country should make the custody determination whenever possible." Id. While some circuits have held that considering such alternative measures is discretionary, rather than mandatory, they still agree that district courts have authority to do so.[1]

**B.     Whether the Petition Is Moot**

Federal jurisdiction requires " 'an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.' " Chafin v. Chafin, 568 U.S. 165, 172 (2013) (quoting Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990)). A case is moot if the parties lack a legally cognizable interest in the outcome of the case such that the court cannot grant any effective relief to the prevailing party. Id. But " 'as long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot.' " Id. (quoting Knox v. Service Employees Intern'l Union, Local 1000, 567 U.S. 298, 307–08 (2012)).

Petitioner argues this case is moot because the relief he sought in the petition—return of S.L.C. to Spain and his custody—has been achieved. The only relief available to Respondent, he

---

[1] In addition to the Ninth Circuit, the Second and Third circuits require a district court that has found a grave risk of harm to consider whether alternative measures can alleviate the risk of harm and facilitate return of the child. Saada v. Golan, 833 F. App'x 829 (2d Cir. 2020), cert. granted, 142 S. Ct. 638 (2021); In re Adan, 437 F.3d 381, 395 (3d Cir. 2006). The First, Eighth, and Eleventh Circuits leave it to the district court's discretion. Danaipour v. McLarey, 386 F.3d 289, 303 (1st Cir. 2004); Acosta v. Acosta, 725 F.3d 868, 877 (8th Cir. 2013); Baran v. Beaty, 526 F.3d 1340, 1346-1352 (11th Cir. 2008). Whether considering such measures is mandatory or discretionary is before the Supreme Court. Saada, 142 S. Ct. 638.

ORDER ON PRETRIAL MOTIONS - 6

says, is an order denying the petition by way of proving her grave-risk defense. He further argues she cannot obtain any effective relief because ordering S.L.C. to be brought to the United States would violate the current Spanish custody order. The Court rejects this argument for two reasons.

### 1.    The Ninth Circuit's mandate.

While nothing prohibits Petitioner from raising mootness at this stage, the Court must consider the Ninth Circuit's mandate. Under the rule of the mandate, "any district court that has received the mandate of an appellate court cannot vary or examine that mandate for any purpose other than executing it." Stacy v. Colvin, 825 F.3d 563, 567–68 (9th Cir. 2016) (internal quotation marks omitted). The Court may "decide anything not foreclosed by [or inconsistent with] the mandate" but "commits jurisdictional error if it takes actions that contradict the mandate." Id. at 568.

The Ninth Circuit remanded for a psychological exam and trial. Dismissing this case as moot is, to say the least, inconsistent with that mandate. The fact that S.L.C. returned to Spain does not alter the analysis, because the Ninth Circuit was well aware of that fact. See Colchester, 16 F.4th 712, 716 (9th Cir. 2021). And the new custody order does not fundamentally change anything, despite what Petitioner claims. While Respondent cannot take S.L.C. outside of Barcelona without his permission, Petitioner is required to bring S.L.C. to Washington once a year. (Brecher Decl. at 22.)

In addition, dismissing based on mootness would render appellate review ineffective. That goes against well-established precedent the Supreme Court has recently reaffirmed in this context. " 'Jurisdiction to correct what had been wrongfully done must remain with the court so long as the parties and the case are properly before it, either in the first instance or when

remanded to it by an appellate tribunal.' " Chafin v. Chafin, 568 U.S. 165, 173–74 (2013) (quoting Northwestern Fuel Co. v. Brock, 139 U.S. 216, 219 (1891)).

      2.  *Respondent can obtain relief even if S.L.C. is in Spain.*

  In addition, the Supreme Court has held that a child's return does not necessarily moot a case if a party can obtain even partial relief. Chafin, 568 U.S. at 173. In Chafin, the district court in Alabama granted the mother's petition and ordered the child returned to Scotland. Id. at 170–71. The father appealed, but the Eleventh Circuit dismissed the appeal as moot because the child had already been returned. Id. at 171. The Supreme Court reversed. The father had appealed the district court's finding that the child's habitual residence was in Scotland. The father thus had a sufficiently concrete interest because the habitual-residence finding would determine which country's courts would decide custody rights. Id. at 173. If the father prevailed on remand, custody rights would be decided by a court in Alabama, not Scotland.

  Petitioner argues Chafin does not apply here because Petitioner did not appeal the Court's finding that S.L.C.'s habitual residence is Spain. See Colchester, 16 F.4th at 723. It is a fair point. Habitual residence is part of a petitioner's prima facie case. If a finding on that issue is reversed, the petitioner cannot get a return order. Here, the contested issue is Respondent's affirmative defense, so the burden is different. But even if Chafin does not decide the issue here, its reasoning is highly relevant. The point that mootness should not frustrate the effectiveness of appellate review applies with force here. See Chafin, 568 U.S. at 173–74. Ultimately, however, the Court is unpersuaded by Petitioner's argument because it ignores the fact that Respondent can still obtain effective relief—such as an order finding S.L.C. is at grave risk of harm and directing ameliorative measures be taken in Spain to eliminate or reduce that risk. See Gaudin v. Remis, 415 F.3d 1028, 1035 (9th Cir. 2005); Radu v. Shon, 11 F.4th 1080, 1086–89 (9th Cir.

2021); In re ICJ, 13 F.4th 753, 764–66 (9th Cir. 2021).  That is enough of an interest to defeat Petitioner's motion because "even the availability of a partial remedy is sufficient to prevent a case from being moot." Chafin v. Chafin, 568 U.S. 165, 177 (2013) (cleaned up).

II. **Rule 41 Motion to Dismiss**

Alternatively, Petitioner moves to dismiss under Rule 41.  Because Respondent has answered, he may only seek dismissal by court order.  Fed. R. Civ. P. Rule 41(a)(2).  The purpose of the voluntary-dismissal rule "is to permit a plaintiff to dismiss an action . . . so long as the defendant will not be prejudiced or unfairly affected by dismissal." Stevedoring Servs. of Am. v. Armilla Intern. B. V., 889 F.2d 919, 921 (9th Cir. 1989) (internal quotations omitted).  The Court generally has discretion to grant or deny a plaintiff's motion for voluntary dismissal. Westlands Water Dist. v. United States, 100 F.3d 94, 96 (9th Cir. 1996).  Such a motion should ordinarily be granted "unless a defendant can show that it will suffer some plain legal prejudice as a result." Smith v. Lenches, 263 F.3d 972, 975 (9th Cir. 2001).

Petitioner's contention that Respondent will suffer no legal prejudice by dismissal is not persuasive for the same reasons the case is not moot.  First, dismissal would be inconsistent with the Ninth Circuit's mandate for a new trial.  See Stacy v. Colvin, 825 F.3d 563, 567–68 (9th Cir. 2016).  Second, even accepting Petitioner's argument that Respondent cannot obtain an order that S.L.C. be brought to Washington and stay here, she could obtain a grave-risk finding and an order for ameliorative measures.  See Gaudin v. Remis, 415 F.3d 1028, 1035 (9th Cir. 2005).  This is sufficient to establish legal prejudice. Smith, 263 F.3d at 976 ("legal prejudice" means "prejudice to some legal interest, some legal claim, some legal argument").

Petitioner's reliance on Ohlander v. Larson is misplaced.  In that case, the Tenth Circuit reversed the district court's denial of the petitioner's motion for voluntary dismissal. Ohlander v.

1 | Larson, 114 F.3d 1531 (10th Cir. 1997). But the parties were litigating concurrent proceedings under the Convention in the United States and Sweden. The petitioner moved to dismiss after the respondent had initiated a parallel proceeding in Sweden. Id. at 1538. And, unlike here, there was no mandate from an appeals court. In light of the Ninth Circuit's mandate and the legal prejudice to Respondent, the Court denies Petitioner's motion for voluntary dismissal.

**III.    The Fee Award**

The Court also denies Petitioner's request to reinstate the award of attorney fees. Under ICARA, the petitioner bears the cost of legal fees unless the court orders the return of the child. Even then, there is no award if the respondent shows it would be clearly inappropriate to order one. The relevant portion of the fees provision states:

> Any court ordering the return of a child . . . shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate.

22 U.S.C. § 9007(b)(3).

The Ninth Circuit has vacated the Court's order and fee award. There is no basis to reinstate it. Petitioner claims Article 26 of the Convention automatically provides for a fee award if the respondent wrongfully removed the child from the child's home country, and that he has proven this here. (See Dkt. No. 127 at 23.) This is not what the Convention says. Article 26 provides that courts "may, where appropriate," grant fees "upon ordering the return of a child or issuing an order concerning rights of access under this Convention." 19 I.L.M. 1501, 1504. Again, there is no such order here. Both the Convention and ICARA make clear that a fee award is predicated on an order returning the child, not merely a finding that the child was wrongfully removed. The reason is obvious: even if the petitioner has already established wrongful removal, the Court must consider a respondent's defenses before issuing a return order.

ORDER ON PRETRIAL MOTIONS - 10

## IV. Discovery

In its decision in this case, the Ninth Circuit emphasized that courts should not allow the expedited nature of Convention cases to prevent a respondent from developing a defense, particularly one based on allegations of domestic violence. Colchester v. Lazaro, 16 F.4th 712, 729 (9th Cir. 2021). It held that the "wholesale denial of discovery in general and of the psychological examination in particular was unreasonable" and that this error "alone would suffice for remand." Id. at 726. With respect to discovery, the Ninth Circuit remanded this case "for appointment of a psychologist," but left other details to the Court. Id. at 729. These include where S.L.C. should reside while the case is pending and the scope of other discovery.

### A. The Psychological Examination

The Article 13(b) "grave risk" defense is the Convention's "mechanism for guarding children from the harms of domestic violence." Monasky v. Taglieri, 140 S. Ct. 719, 729 (2020). A respondent can establish a grave risk defense when " 'the petitioning parent had actually abused, threatened to abuse, or inspired fear in the children in question,' " or by showing spousal violence, " 'particularly when it occurs in the presence of the child.' " Colchester, 16 F.4th at 718 (quoting Ermini v. Vittori, 758 F.3d 153, 164 (2d Cir. 2014)). A respondent must be able to develop this defense through competent evidence for trial to be fair, and a psychological exam is a widely accepted and often indispensable method of investigating and presenting evidence of child abuse. See id. at 724. Having denied Petitioner's motion to dismiss, it is clear there must be a psychological examination of S.L.C.

Respondent alleges Petitioner has physically and emotionally abused S.L.C. by yelling at her, ordering her to do various chores, grabbing and throwing S.L.C. in the hallway, and kicking her down the stairs. (See Dkt. No. 69 at 6–8.) She also alleges that Petitioner abused her during

their relationship, including while she was pregnant. (See id.) Respondent made other detailed allegations at trial. See Colchester, 16 F.4th at 721. The purpose of a psychological examation here is to help the Court determine whether S.L.C. is at grave risk of psychological or physical harm in Petitioner's custody.

Respondent asks that the examination be conducted in Washington by a local expert over the course of several weeks. The examination would include several interviews of S.L.C. as well as interviews of Petitioner and Respondent. Respondent asks the Court to order that S.L.C. stay with her mother during the examination so that S.L.C. is not subject to, or afraid of, abuse by Petitioner and feels free to disclose what she knows. The parties had apparently agreed to such an arrangement ahead of the February 2021 trial. (See Dkt. No. 123 at 22.)

In support, Respondent includes a declaration from Dr. Marsha Hedrick, a forensic psychologist Petitioner's attorneys have used in the past. (See Dkt. No. 123 at 20–21; Dkt. No. 126, Declaration of Dr. Marsha Hedrick.) Dr. Hedrick proposes a three-week period for the evauluation and a four-to-five week period for completing both the evaluation and report. (Hedrick Decl. ¶ 2.) Dr. Hedrick also recommends taking measures to remove S.L.C. from parental influence during the evaluation:

> During the short interview process of the child (which would not span more than three weeks), it is critical that [S.L.C.] not be transported to the evaluation sessions by either parent. It is also strongly recommended that she not be living with either parent for at least the durtation of the time frame when I conduct the evaluation. The best person to transport, and for the child to live with during the interview process, is someone both parents perceive to be netural. At the least, the parents should agree that the person be someone who would not attempt to influence the child.

(Id. ¶ 3.)

Petitioner wants the evaluation to be done in Spain and also states that he will have S.L.C. be examined by his own expert. (Dkt. No. 127 at 126–27.) He argues that there are

ORDER ON PRETRIAL MOTIONS - 12

qualified psychologists in Spain and that Respondent can use her expert to conduct the evaluation remotely or work with a Spanish expert. (Dkt. No. 131 at 6–7.) Finally, he raises the risk that Respondent will again take S.L.C. with her.

The Court agrees with Respondent that it is necessary for the examination to take place in Washington to ensure it is reliable, unimpeded by language or cultural barriers, and subject to the Court's remedial powers. (See Dkt. No. 123 at 17–24.) Despite what Petitioner says, nothing in the current Spanish custody order prohibits him from bringing S.L.C. to Washington for the examination and trial. To the contrary, he is required to bring S.L.C. here once a year. (Brecker Decl., Ex. 2 at 22.) Petitioner states that visit is limited to one week in duration, but that appears to be a constraint of his creation. There is no such limit in the custody order. (See generally id.) There is more than enough room in the custody order for the examination to take place here, where it will face the fewest practical and legal challenges.

Petitioner overstates the potential disruption of S.L.C. spending several weeks with her grandmother, whom she is expected to visit once a year. S.L.C. will not be in Respondent's custody, Petitioner will retain S.L.C.'s passport, and all parties will be subject to the jurisdiction of the Court. In contrast, if Respondent's allegations are true, it would be much more harmful to S.L.C. (and the quality of the evaluation) if S.L.C. were to reside during the evaluation with someone who is abusing or has abused her. Requiring the evaluation to take place here is in accord with the Court's authority to take measures to protect the well-being of the child before disposition. 22 U.S.C. § 9004(a).

In addition, there are obvious advantages to having an expert who is under the Court's jurisdiction and familiar with federal and local standards. The proposed psychologist, Dr. Hedrick, possesses qualifications that are unchallenged. Other courts have relied on her work.

1 | See In re Marriage of Chandola, 180 Wn.2d 632, 649–51 (2014); United States v. Bordman, 895

2 | F.3d 1048, 1052–53, 1056–57 (8th Cir. 2018).  Petitioner has not provided an equal alternative.

3 | For all of these reasons, the Court concludes that Dr. Hedrick shall conduct the examination in

4 | Washington as set forth in this Order.

5 |      **B.**     **Other Discovery**

6 |      Finally, Respondent asks the Court to authorize additional discovery.  She claims

7 | Petitioner has not responded to her discovery requests dated November 28, 2021.  (See Brecher

8 | Decl., Ex. 7.).  Petitioner objects to any discovery beyond the psychological examination on the

9 | ground that it is duplicitous and will delay the proceeding.  (Dkt. No. 131 at 10–13.)

10 |      Although courts should use "the most expeditious procedures available," see Convention,

11 | art. 2, 19 I.L.M. 1501, there is no prohibition on discovery in these cases.  The Ninth Circuit

12 | made it clear that Respondent must have the opportunity to develop her defenses.  See Colchester

13 | v. Lazaro, 16 F.4th 712, 726 (9th Cir. 2021) (the "wholesale denial of discovery in general

14 | . . . was unreasonable").  Her requests for production focus on Petitioner's business activities and

15 | her allegation that he is engaged in illegal drug trafficking.  (See Brecher Decl., Ex. 7.)  Such

16 | activity, if proven, is relevant to her grave-risk defense because it could subject S.L.C. to risks

17 | associated with illegal business operations.  (See Hedrick Decl. ¶ 4.)

18 |      The existence of other proceedings does not free Petitioner from the general obligations

19 | of discovery.  Unless barred by the law of preclusion, Respondent has the right to mount her

20 | defense.  To the extent her requests duplicate discovery from other proceedings, re-producing

21 | material imposes a minimal burden on Petitioner and presents little risk of delaying trial.  The

22 | Court finds additional discovery to be appropriate here.  The Parties shall submit a discovery

23 | plan to the Court within 14 days of this Order.

24 |

ORDER ON PRETRIAL MOTIONS - 14

***

For the reasons discussed, the Court DENIES Petitioner's motion and GRANTS Respondent's motion as set forth in this Order. The clerk is ordered to provide copies of this order to all counsel.

Dated March 3, 2022.

*[signature]*

Marsha J. Pechman
United States Senior District Judge